## RECORD NO. 22-2077
_____

**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

**In The**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

**TERESSA MESTEK,**

> *Plaintiff – Appellant,*

**v.**

**LAC COURTE OREILLES COMMUNITY HEALTH CENTER,**
**LOUIS TAYLOR (in both his personal and official capacity),**
**JACQUELINE BAE, PH.D. (in both her personal and official capacity),**
**SHANNON STARR, M.D. (in both his personal and official capacity),**
**SARAH KLECAN (in both her personal and official capacity),**
**DAVID FRANZ (in both his personal and official capacity),**
**And MICHAEL POPP (in his personal capacity),**

> *Defendants -- Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

_____ _____

**BRIEF OF APPELLANT**

_____ _____

**Mick G. Harrison, Attorney at Law,**
**520 S. Walnut Street, #1147**
**Bloomington, IN 47402**
**Tel.: 812-361-6220; Fax: 812-233-3135**
**Eml. mickharrisonesq@gmail.com**
**Counsel for Plaintiff-Appellant**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2077

Short Caption: Teressa Mestek v. Lac Courte Oreilles Community Health Center, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Teressa Mestek

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mick G. Harrison, Attorney at Law; Paul Schinner, Esq.; Nola Hitchcock Cross, Esq.; Cross Law Firm, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Mick G. Harrison      Date: July 7. 2022

Attorney's Printed Name: Mick G. Harrison

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: 520 S. Walnut Street, #1147

Bloomington, IN 47402

Phone Number: 812-361-6220      Fax Number: 812-233-3135

E-Mail Address: mickharrisonesq@gmail.com

rev. 12/19 AK

**Page 2**

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT  .  .  .  .  .  .  .  .  2

TABLE OF AUTHORITIES  .  .  .  .  .  .  .  5

JURISDICTIONAL STATEMENT  .  .  .  .  .  .  7

STATEMENT OF ISSUES PRESENTED FOR REVIEW  .  .  9

STATEMENT OF THE CASE  .  .  .  .  .  .  .  10

SUMMARY OF ARGUMENT  .  .  .  .  .  .  .  20

ARGUMENT  .  .  .  .  .  .  .  .  23

I.    The District Court Erred in Failing to Convert Defendants' Motion to One for Summary Judgment Notwithstanding that the District Court Considered Facts Outside the Pleadings  .  .  .  .  23

II.   The District Court Incorrectly Applied the Standard under Rule 12(b)(6) for Deciding a Motion to Dismiss by Failing to Take All of the Facts Alleged in Ms. Mestek's Amended Complaint as True  .  27

III.  The District Court Erred as a Matter of Law in Concluding that Defendants Had a Sovereign Immunity Defense to Ms. Mestek's Claims for Injunctive Relief Against the Individual Defendants  .  32

IV.   The District Court Erred as a Matter of Law in Concluding that Ms. Mestek's Amended Complaint Did Not State Claims Against Any Defendants (Except Defendant Popp) in Their Personal Rather than Official Capacities  .  .  .  .  .  .  34

V.    The District Court Erred as a Matter of Law in Dismissing Ms. Mestek's State Law Claim Against Defendant Popp  .  .  37

VI.     The District Court Erred as a Matter of Law in Concluding that LCO CHC, as a Tribal Entity, Could Not Be Sued Under the FCA Anti-Retaliation Provision which Does Not Limit Liability to Either "Persons" or "Employers"     .     .     .     .     .     .     38

CONCLUSION AND RELIEF REQUESTED     .     .     .     .     40

RULE 32(g)(1) CERTIFICATE OF COMPLIANCE     .     .     .     41

CIR. R. 30(d) CERTIFICATION REGARDING APPENDIX.     .     .     42

CERTIFICATE OF SERVICE     .     .     .     .     .     .     .     43

Short Appendix Bound with Brief – Decision of District Court

Separate Appendix

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).     .     .     .     .     .     30

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)     .     .     .     30

*Blagojevich v. Gates*, 519 F.3d 370 (7th Cir. 2008) .     .     .     .     9, 28

*Dahlstrom v. Sauk-Suiattle Indian Tribe*,
2017 WL 1064399 (W.D. Wash. Mar. 21, 2017)     .     .     .     .     36

*Dugan v. Rank*, 372 U.S. 609 (1963)  .     .     .     .     .     .     30

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)     .     .     .     27-28

*In re Coughlin*, 33 F.4th 600 (2022)     .     .     .     .     .     .     39-40

*Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614 (7th Cir. 2007)     .     27-28

*Lewis v. Clarke*, 137 S. Ct. 1285 (2017)     .     .     .     .     .     35-36

*Malone v. Bowdoin*, 369 U.S. 643 (1962)     .     .     .     .     .     30

*Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818 (7th Cir. 2016)     9, 28

*Peckmann v. Thompson*, 966 F.2d 295 (7th Cir. 1992)     .     .     .     24

*Stoner v. Santa Clara County Office of Education*,
502 F.3d 1116 (9th Cir. 2007)  .     .     .     .     .     .     36

*TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999)     .     .     33-34

*Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927 (8th Cir. 2002)     .     .     38-39

**Constitution, Statutes, Rules, and Legislative History**

28 U.S.C. § 1291 . . . . . . . . . . 7

28 U.S.C. § 1331 . . . . . . . . . . 7

28 U.S.C. § 1367 . . . . . . . . . . 7

31 U.S.C. § 3729(a)(1) . . . . . . . . . 38

31 U.S.C. § 3730(h) . . . . . . . . 7-8, 10, 38-39

31 U.S.C. § 3732 . . . . . . . . . . 7

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . 27

Fed. R. Civ. P. 12(d) . . . . . . . . . 23-24

Fed. R. Civ. P. 56 . . . . . . . . . 23

**JURISDICTIONAL STATEMENT**

**Basis for Jurisdiction of the Court of Appeals**

The federal statute that provides appellate jurisdiction to this Court of Appeals is 28 U.S.C. § 1291. Plaintiff-Appellant here appeals to the United States Court of Appeals for the Seventh Circuit from the final judgment for Defendants entered in this action on May 18, 2022, and the accompanying Opinion and Order, in their entirety. The District Court's final judgment disposed of all claims of all parties in this action. No motion for new trial, for reconsideration, or to alter or amend was filed.

Plaintiff-Appellant's Notice of Appeal was filed in the District Court on June 17, 2022. This filing was within 30 days of the District Court's final judgment which is the subject of this appeal, and therefore was timely.

**Statutory and Fact Basis for the Jurisdiction of the District Court**

The federal statutes that provided jurisdiction to the District Court are 28 U.S.C. § 1331 (federal question), 31 U.S.C. § 3730(h) (False Claims Act); and 31 U.S.C. § 3732(a) (False Claims Act). The District Court had supplemental jurisdiction of Plaintiff Mestek's related state law employment claims for interference with contract(s) pursuant to 28 U.S.C. § 1367 as the facts on which these state claims are based are the same facts regarding which the federal retaliatory discharge and blacklisting claims are based.

Plaintiff's action below was a civil action pursuant to the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. § 3730(h), and pursuant to state law, relating to alleged retaliation against Plaintiff Mestek by Defendants, including the termination of her employment because she raised concerns about, *inter alia*, the past submission and potential future submission of false claims to the federal government by Defendants.

Plaintiff in her Amended Complaint, Appendix (Appx) A-3, asserted three causes of action against seven Defendants under the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. § 3730(h) and Wisconsin common law. Plaintiff asserts that during her employment as Defendant Lac Courte Oreilles Community Health Center (LCO-CHC)' s Director of Health Information Management, she engaged in a variety of efforts intended to stop LCO-CHC's submission of false claims for payment for healthcare services to Government-funded health insurance plans. Plaintiff further asserted that shortly after Defendants learned of Plaintiff's efforts, they terminated or caused the termination of her employment, and then interfered with her efforts to secure re-employment.

Defendants argued below that they are entitled to tribal sovereign immunity and the District Court in its Opinion and Order that is the subject of this appeal held in favor of Defendants on this immunity argument. In the Seventh Circuit, as the Defendants and the District Court recognized, the issue of tribal sovereign

immunity is not jurisdictional. *See, e.g., Meyers v. Oneida Tribe of Indians of Wis.*,
836 F.3d 818, 822 (7th Cir. 2016); *Blagojevich v. Gates*, 519 F.3d 370, 371 (7th
Cir. 2008).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Issue 1.       Did the District Court err when it failed to convert Defendants'
               Motion to Dismiss to one for summary judgment notwithstanding that
               the district court considered facts outside the pleadings?

Issue 2.       Did the District Court misapply the standard under Rule 12(b)(6) for
               deciding a motion to dismiss when it failed to take all the well plead
               facts alleged in Ms. Mestek's Amended Complaint as true?

Issue 3.       Did the District Court err when it concluded that Defendants had a
               meritorious sovereign immunity defense to Ms. Mestek's claims for
               injunctive relief against the individual Defendants?

Issue 4.       Did the District Court err when it concluded that Ms. Mestek's
               Amended Complaint did not state claims against any of the
               Defendants (except Defendant Popp) in their personal rather than
               official capacities, notwithstanding the Amended Complaint's explicit
               assertions of personal capacity claims, and assertions of supporting
               facts regarding the actions of individual defendants?

Issue 5.       Did the District Court err when it dismissed Ms. Mestek's
               supplemental jurisdiction state law claim against Defendant Popp
               notwithstanding that Plaintiff Mestek's federal injunctive relief claims
               should not have been dismissed on sovereign immunity grounds?

Issue 6.       Did the District Court err when it concluded that Defendant LCO
               CHC, as a tribal entity, could not be sued under the federal False
               Claims Act's anti-retaliation provision, notwithstanding that this
               provision is not limited in its application to either "persons" or
               "employers"?

**Page 9**

**STATEMENT OF THE CASE**

Plaintiff Teresa Mestek brought claims in her Amended Complaint under the federal False Claims Act (FCA), 31 U.S.C. § 3730(h), and Wisconsin common law, claiming that defendants wrongfully retaliated against her by terminating her employment at the Lac Courte Oreilles Community Health Center ("LCO-CHC") as a result of her efforts to prevent health care coding and billing fraud. District Court Opinion, Short Appx SA-2; Amended Complaint, Appx A-3.

From 1994 to 2003, Mestek worked at LCO-CHC before moving to an unrelated hospital system. In 2013, Mestek was rehired at LCO-CHC as the Director of Health Information, where she oversaw Health Information Management compliance and documentation standards. District Court Opinion, Short Appx SA-3.

Defendant LCO-CHC is a health care clinic associated with the Lac Courte Oreilles Tribe Band of Lake Superior Chippewa Indians ("the Tribe").  While employed by the LCO-CHC, plaintiff Teresa Mestek served as its Director of Health Information. At the time the complaint was filed, defendant Louis Taylor was the Chief Executive Officer of the Tribe and defendants Shannon Starr, Sarah Klecan, David Franz, and Jaqueline Bae were all LCO-CHC employees. Finally, defendant Michael Popp was the owner and president of MJP Healthcare

**Page 10**

Consulting LLC, which worked with LCO-CHC to implement a new billing system. District Court Opinion, Short Appx SA-3.

Defendant Shannon Starr is a physician licensed to practice Medicine in the state of Wisconsin. At all times relevant to the complaint, Defendant Starr was LCO CHC's Medical Director. Amended Complaint, Appx A-3, ¶ 8.

Defendant Jaqueline Bae is a resident of the state of California and served as LCO CHC's Chief Executive and Administrative Officer for the LCO CHC at the time of Ms. Mestek's employment termination. Amended Complaint, Appx A-3, ¶ 12.

Defendant Michael Popp is a resident of the state of Wisconsin, City of Muskego. At all times relevant to the Complaint, Defendant Popp was the owner and president of MJP Healthcare Consulting, LLC through which he was engaged by LCO-CHC to provide healthcare consulting services. Amended Complaint, Appx A-3, ¶ 13.

During the times relevant to this complaint including 2017 and 2018, LCO CHC acted de facto as a business entity independent of the LCO Tribe. Amended Complaint, Appx A-3, ¶ 14.

During the times relevant to this complaint including 2017 and 2018, the LCO CHC's daily operation and decision making, including decisions regarding termination of employment of LCO CHC staff including Ms. Mestek, was

**Page 11**

controlled by the LCO CHC's own administrative staff and not the LCO Tribe. Amended Complaint, Appx A-3, ¶ 16.

Although the Medical Director of LCO CHC, who ran the operations of the LCO CHC during this time, was purportedly overseen by a Health Director who reported to the LCO Tribal Governing Board, the Health Director position was either left unfilled or filled by someone on an interim basis or someone appointed for accreditation purposes who served in a figurehead capacity rather than a functional leadership role. Amended Complaint, Appx A-3, ¶ 17.

Ms. Bae had begun her tenure as Health Director of LCO CHC on July 9, 2018, arriving just a day before the LOC CHC was to be subject to an accreditation survey. Shortly after this accreditation survey was completed in July 2018, Ms. Bae was no longer physically present on the LCO CHC site, and was engaged in employment and/or consulting work in another state. Ms. Bae served as Health Director of LCO CHC in a figurehead capacity only for purposes of obtaining a favorable accreditation decision. Amended Complaint, Appx A-3, ¶¶ 21-23.

In 2016, LCO-CHC purchased the rights to use "Intergy," an electronic health record software system developed and sold by Greenway Health, LLC. LSO-CHC planned to implement the Intergy software to handle billing and coding starting in 2017, with Michael Popp, an independent consultant liaising with Greenway Health and using Intergy software system files from the Peter

Christensen Health Center as a template for LCO-CHC's upcoming transition to Intergy. However, the software files from Christensen Health allegedly contained outdated diagnostic codes, causing the new LCO-CHC Intergy system to contain incorrect codes and creating severe issues with client billing and documentation. District Court Opinion, Short Appx SA-3 - SA-4.

As the Director of Health Information, Mestek worked with another coding consultant, James Walker, to attempt to fix these issues and bring them to the attention of LCO-CHC management, as well as train its healthcare providers on the new system. However, management was slow to respond to the resulting coding and billing errors found by Mestek and Walker. Meanwhile, these errors posed ongoing risks to LCO-CHC's compliance with regulations for federally funded healthcare programs. District Court Opinion, Short Appx SA-4.

During the times relevant to this complaint including 2017 and 2018, certain LCO CHC staff and consultants were engaged in a rogue operation of improper and false billing of federal Medicare and Medicaid programs in the name of LCO CHC, which became the subject of Ms. Mestek's protected whistleblowing activities. The LCO Tribal Governing Board was unaware of this false billing of federal programs and had not knowingly approved the submission to federal programs of these false billings. Amended Complaint, Appx A-3, ¶¶ 24-25.

On May 3, 2018, Ms. Mestek participated in a conference call with Defendant Popp and Consultant Walker during which Mr. Walker noted he was preparing a report for the Tribal Governing Board regarding the new Intergy EHR system and the coding and billing irregularities that he, Ms. Mestek, and AHD Hovde had identified and which had not been corrected. Amended Complaint, Appx A-3, ¶ 88.

The very next day, May 4, 2018, Consultant Walker was notified by LCO CHC Interim Health Director Don Smith, via email, that his consulting contract with was being terminated in 30 days. However, Consultant Walker's access to LCO CHC's computer system was cut off shortly after this notice, which prevented Consultant Walker from completing his contractual obligations to LCO CHC in regard to working with Ms. Mestek to complete the new audit and finalize his report from the prior audit. Consultant Walker brought this to the attention of LCO CHC officials. Later the same day, on May 11, 2018, the LCO CHC's May 4, 2018, 30-day notice of contract termination was superseded by a new LCO CHC notice via email of immediate termination of Consultant Walker's contract with LCO CHC. Amended Complaint, Appx A-3, ¶¶ 89-90.

When consultant Walker's contract was terminated by LCO-CHC in May of 2018, Popp was asked to assume Walker's coding responsibilities. Around 2 months later, however, LCO-CHC received an audit report that had been authored

by Walker in 2017, which noted serious flaws with the Intergy program and identified Plaintiff Mestek's role in investigating those problems. District Court Opinion, Short Appx SA-4.

During the July 10-11, 2018, AAAHC accreditation survey, Ms. Mestek met with one of the surveyors and showed him the Greenway Intergy EHR system and answered his questions, with interim Health Director Don Smith also present. During the meeting, Ms. Mestek informed the surveyor about all the deficiencies that were occurring in the Intergy EHR, including medical record numbers, coding problems, and the fact that labs were being performed without having a signed order by the provider. On or about July 15, 2018, Consultant Walker's report from his 2017 audit arrived at LCO CHC's office. Consultant Walker's report detailed and documented numerous LCO CHC coding and billing problems and apparent LCO CHC fraudulent billing practices. Amended Complaint, Appx A-3, ¶¶ 99-102.

In July 2018, after LCO-CHC received Walker's report, Mestek was called to Medical Director Jacqueline Bae's office and asked if she was "loyal" to LCO-CHC, to which Mestek said, "yes." Even so, Mestek continued to look for coding compliance issues in LCO-CHC documentation after that meeting. District Court Opinion, Short Appx SA-4.

**Page 15**

Throughout the six months leading up to her August 24, 2018 termination, Ms. Mestek continued to work with AHD Gerry Hovde and Consultant Walker on the LCO CHC medical records coding and billing process, exchanging numerous emails with Consultant Walker and Consultant Popp between February and May 2018 regarding questions and concerns about the coding and billing issues arising from use of the new Greenway Intergy EHR system, such as (a) the fact that false and undocumented, unauthenticated charges for medical services were being generated, and (b) that the CMS healthcare provider's signature requirements were being violated. Amended Complaint, Appx A-3, ¶ 80.

On or about August 21, 2018, a follow-up letter from Consultant Walker to LCO CHC regarding his audit report arrived at LCO and LCO CHC offices. In this follow-up letter, Consultant Walker notified LCO-CHC and the LCO Tribal Governing Board that he had sent a printed copy of his audit report to LCO CHC's Health Director, certified mail with tracking, and reminded the Board that he had previously, on or about July 15, 2018, sent a copy of his audit report to the Board itself because he felt legally and ethically compelled to report LCO CHC's apparent non-compliance with the federal False Claims Act and with CMS (the federal government's Medicare and Medicaid office) billing and medical records coding requirements. Amended Complaint, Appx A-3, ¶¶ 115-116.

On August 24, 2018, Ms. Mestek received a phone call from LCO CHC Human Resources (HR) requesting that she come down to the HR office during her scheduled lunch time. When Ms. Mestek arrived at the HR office, she was met by Defendant Dr. Shannon Starr seated in a chair alongside HR Director Klecan. Defendant Director Klecan was well aware of Ms. Mestek's protected activity, including her role in assisting Consultant Walker in identifying and stopping false claims, as Defendant Klecan, like Defendant Franz, had participated in multiple, regular meetings in which Ms. Mestek discussed her concerns about the false claims caused by the Intergy system. Defendant Starr handed Ms. Mestek a typed letter signed by Defendant Starr and stated that Ms. Mestek was to clean out her office and take all personal belongings home as soon as possible, because LCH CHC had determined that they no longer needed Ms. Mestek's services at the LCO CHC. The letter stated that Ms. Mestek was terminated because her duties overlapped with duties other staff members were performing, and that her position has therefore been eliminated. No conduct or performance issues were identified in this termination notice letter. The letter was signed by Dr. Starr over Jacqueline Bae's typed name with no indication that Dr. Starr had Ms. Bae's approval to sign for her. Amended Complaint, Appx A-3, ¶¶ 117-122.

At the time Ms. Mestek's employment was terminated, the letter noticing Ms. Mestek of the termination of her employment was physically signed by the

LCO CHC Medical Director, Dr. Shannon Starr. Amended Complaint, Appx A-3, ¶ 18.

Although the then-Health Director Ms. Jacqueline Bae's typed name appeared below Medical Director Starr's signature on this termination notice letter, upon Ms. Mestek's direct inquiry by phone with then-Health Director Bae, Ms. Mestek learned that the Health Director had not made the decision to terminate Ms. Mestek's employment but rather that the decision was made by Medical Director Starr. Amended Complaint, Appx A-3, ¶ 19.

Ms. Mestek called Ms. Bae and Ms. Bae stated she did not make the decision to terminate Ms. Mestek, that it was Dr. Starr who wanted Ms. Mestek gone. After her termination, an LCO CHC employee informed Ms. Mestek that the real reason Ms. Mestek was terminated was that Ms. Mestek was considered a threat by LCO CHC and Defendant Starr because of Ms. Mestek's knowledge of and prior efforts to stop the coding and billing fraud that LCO CHC engaged in. The same employee explained how Defendant Starr had screamed at her for reviewing the documentation on diabetic patients to ensure they received their lab work and foot exams and appointments, threatened her and directed her to "stay out of" the medical records alluding directly to what he called "trouble" caused by Ms. Mestek's review of such records. Amended Complaint, Appx A-3, ¶¶ 131-133.

**Page 18**

The decision to terminate Ms. Mestek's employment was an ultra vires act of LCO CHC Medical Director Shannon Starr that was not approved by the LCO Tribal Governing Board. Amended Complaint, Appx A-3, ¶ 20.

Ms. Mestek appealed her termination to LCO CHC. That appeal was denied by defendant Bae, prompting Mestek to bring this action under the FCA's anti-retaliation provision and Wisconsin common law. District Court Opinion, Short Appx SA-4 – SA-5.

In May 2019, LCO CHC advertised for a new HIM director/manager – i.e. sought to fill the position that LCO CHC HR Director Klecan and Dr. Starr had told Ms. Mestek at the time of her termination was being eliminated as unneeded. Amended Complaint, Appx A-3, ¶ 135.

As a result of its receipt of Medicare funds and/or its express or implied agreement as a Medicare-enrolled provider, LCO CHC consented to be bound by certain federal laws, including the federal False Claims Act (FCA) and its prohibition of the submission of false claims and whistleblower retaliation, thereby waiving any alleged sovereign immunity as to Plaintiff's claims under 31 U.S.C. § 3730(h). Amended Complaint, Appx A-3, ¶ 29.

On August 24, 2021, Plaintiff Mestek filed her original Complaint initiating this action and on January 3, 2022 filed her Amended Complaint. Dkt-19, Appx A-3.

Defendants filed a motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. District Court Opinion, Short Appx SA-2. Defendants argued that the FCA does not allow claims against an arm of a federally-recognized Native American tribe, and that the LCO-CHC is a tribal entity entitled to protection under the doctrine of sovereign immunity. *Id*.

On May 18, 2022, the District Court's Opinion and Order, Short Appx SA-2, and accompanying Judgment, Short Appx SA-17, granting Defendants' motion to dismiss all of Plaintiff's claims was entered. Plaintiff Mestek, on June 17, 2022, timely appealed the dismissal of all her claims by the District Court.

## SUMMARY OF ARGUMENT

The District Court erred in failing to convert Defendants' motion to dismiss to one for summary judgment notwithstanding that the District Court considered facts outside the pleadings. The District Court took judicial notice of two tribal code documents filed as exhibits to Defendants' Motion to Dismiss and then at least implicitly relied on those tribal code documents to establish facts that were contested by Plaintiff Mestek and that were contradicted by Mestek's well plead allegations in her Amended Complaint (facts that those exhibits could not possibly establish given their nature as tribal code).

**Page 20**

The District Court incorrectly applied the standard under Rule 12(b)(6) for deciding a motion to dismiss by failing to take all of the facts alleged in Ms. Mestek's Amended Complaint as true. As a prime example, the District Court found as fact (on a motion to dismiss) that Health Director and CHC CEO Bae had signed the CHC letter terminating Ms. Mestek's employment when Ms. Mestek clearly alleged in her Amended Complaint that it was the Medical Director Starr who signed that termination decision notice (and who lacked authority to do so).

The District Court also erred in concluding that Defendants had a tribal sovereign immunity defense to Ms. Mestek's claims for injunctive relief against the individual defendants. While the LCO tribe itself may be protected by tribal sovereign immunity from such claims, individual tribal officials are subject to claims for prospective injunctive relief, whether in a personal or official capacity.

The District Court further erred in concluding that Ms. Mestek's Amended Complaint did not state claims against any Defendants (except Defendant Popp) in their personal rather than official capacities. Although the District Court notes that Plaintiff Mestek did superficially assert claims against the individual Defendants in their personal capacities, the District Court held that the Amended Complaint did not assert such claims sufficiently. But it was not just the caption of the Amended Complaint that referenced the individual defendants and their individual conduct relevant to Ms. Mestek's asserted claims. The facts alleged throughout the

Amended Complaint make clear that the assertion of claims against the individual defendants was more than pro forma. These claims against the individual defendants had substance. Defendant Starr, the LCO CHC Medical Director, as an example, is alleged to have signed the termination letter over Health Director Bae's name, ending Plaintiff Mestek's employment, even though Health Director Bae was not involved in the decision to terminate Ms. Mestek.

The District Court additionally erred in dismissing Ms. Mestek's state law claim against Defendant Popp. The District Court after concluding that all of Ms. Mestek's federal claims should be dismissed, determined that it had discretion to dismiss Ms. Mestek's supplemental jurisdiction based claim against Defendant Popp. But as explained *infra*, at minimum Plaintiff Mestek's federal claims for injunctive relief against the individual Defendants should not have been dismissed on tribal sovereign immunity grounds, and therefore the District Court did have an obligation to hear and decide the supplemental jurisdiction based state law claim against Defendant Popp.

The District Court also erred in concluding that LCO CHC, as a Tribal Entity, could not be sued under the FCA anti-retaliation provision which does not limit liability to either "persons" or "employers." This appears to be an issue of first impression for the Seventh Circuit. Plaintiff requests the Seventh Circuit to adopt the position that even though the FCA's anti-retaliation provision does not

**Page 22**

explicitly reference tribes as potentially liable parties, because this provision is not limited to "persons" and is no longer limited even to "employers," that the intent of Congress is clear enough that all those who might retaliate against an FCA whistleblower should fall within the scope of this remedial provision, even Native American tribes.

**ARGUMENT**

**I.    THE DISTRICT COURT ERRED IN FAILING TO CONVERT DEFENDANTS' MOTION TO ONE FOR SUMMARY JUDGMENT NOTWITHSTANDING THAT THE DISTRICT COURT CONSIDERED FACTS OUTSIDE THE PLEADINGS**

The standard of review for this issue is *de novo* because it involves the issue of law at to whether Defendants' motion to dismiss should have been converted to a motion for summary judgment due to have relied on matters outside the pleadings.

The Defendants' Motion to Dismiss below relied on, and the District Court below considered, matters outside the pleadings which are not subject to judicial notice, at least for the facts for which these exhibits were relied upon by the District Court to establish. When matters outside the pleadings are filed in support of a motion to dismiss, pursuant to Fed. R. Civ. P. 12(d), Defendants' motion must be treated as one for summary judgment under Rule 56.

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

The factual allegations regarding LCO-CHC's operational and organizational relationship with the Tribe asserted explicitly or implicitly in the Defendants' Exhibit 5, Appx A-39, and Exhibit 6, Appx A-48, which the District Court judicially noticed, District Court Opinion, Short Appx SA-7 – SA-12, cannot be properly responded to by Plaintiff Mestek without the opportunity to conduct discovery and to submit her own competing evidence via the summary judgment procedure. Ms. Mestek is entitled to an opportunity to present her own evidence opposing Defendants' defacto summary judgment motion. *See, e.g., Peckmann v. Thompson*, 966 F.2d 295, 298 (7th Cir. 1992) ("To grant the motion when the supporting documents the rule contemplates are not before the court is to deprive the nonmovant of the opportunity to be heard on the existence of disputed factual issues").

The Defendants' asserted tribal sovereign immunity defense involves fact issues regarding its potential applicability to each of the different defendants which range from the Tribal Chairman through clinic staff to an outside consultant. These fact issues must be resolved before the proper application of the doctrine of tribal sovereign immunity may be decided and these fact issues may not be resolved, at least not in Defendants' favor, without use of the summary judgment process

**Page 24**

because reliance on the pleadings alone does not support granting Defendants' motion.

The District Court failed to convert defendants' motion to one for summary judgment. Dist. Court Op., Short Appx SA-8 – SA-9. However, this was error because the Court considered facts outside the pleadings, and which were not properly the subject of judicial notice. The District Court incorrectly considered documents beyond the pleadings to draw conclusions regarding material facts related to issues key to determination of Defendants' sovereign immunity defense.

Such genuinely disputed facts, regarding which the District Court incorrectly relied on documents outside the pleadings, included the key material fact issue of whether any of the individual defendants acted ultra vires or outside the scope of their authority in terminating Ms. Mestek's employment or otherwise retaliating against her (including by blacklisting her or interfering with her employment), and whether the Tribal governing body actually oversaw and approved the decision to terminate Ms. Mestek's employment.

The District Court erred in concluding that Defendants' Exhibit 5, Appx A-39, and Exhibit 6, Appx A-48, were central and critical to *Ms. Mestek's* claims and therefore the Court was allowed to take judicial notice of them, when to the contrary these exhibits were not central to Ms. Mestek's claims but rather only relevant to *Defendants*' immunity defense. The District Court improperly took

judicial notice of these tribal code documents to establish facts regarding how the

LCO Tribe and the CHC actually operate and interrelate. But these documents are

law and policy documents that at most can establish what the LCO Tribe intended.

These documents cannot establish as a matter of fact events that have actually

happened or not happened in the operation of the LCO and CHC and in

interactions between them.

    This error led to the District Court incorrectly concluding at the motion to

dismiss stage that the CHC and its individual officials and employees acted as an

arm of the LCO Tribe for sovereign immunity purposes when they terminated Ms.

Mestek's employment and that the CHC and other defendants were entitled to

sovereign immunity. But, to the contrary, these were genuinely disputed material

facts and at minimum should have been subject to summary judgment procedures

and not decided on a motion to dismiss.

    The tribal code documents judicially noticed by the District Court, while

they may be judicially noticed for what they represent (what the tribal code says),

cannot, for example, be judicially noticed for the purpose of establishing other

facts material to the case and the immunity issues such as whether Medical

Director Starr was acting ultra vires in terminating Ms. Mestek's employment by

signing Health Director Bae's name to the termination notice even though Health

Director Bae had not made a decision to terminate Ms. Mestek's employment. *See* Amended Complaint, Appx A-3, ¶¶ 17-20, 110-135.

Because the District Court failed to convert Defendants' motion to dismiss, which relied on matters outside the pleadings, to one for summary judgment, this Court of Appeals should reverse the District Court's decision granting Defendants' motion to dismiss.

## II.   THE DISTRICT COURT INCORRECTLY APPLIED THE STANDARD UNDER RULE 12(b)(6) FOR DECIDING A MOTION TO DISMISS BY FAILING TO TAKE ALL OF THE FACTS ALLEGED IN MS. MESTEK'S AMENDED COMPLAINT AS TRUE

The standard of review for this issue is *de novo* because it involves the issues of law at to whether the District Court took all of the facts alleged in Ms. Mestek's Amended Complaint as true, and whether the District Court drew all reasonable inferences from the facts alleged in Ms. Mestek's Amended Complaint in her favor.

It is well established, as the District Court acknowledged, that all of the facts alleged in Ms. Mestek's Amended Complaint must be taken as true by the District Court in deciding a motion to dismiss. *See, e.g., Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007); *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). This is true even regarding facts related to issues of sovereign immunity. Sovereign immunity is not a jurisdictional issue in the 7th Circuit. *See,*

**Page 27**

*e.g.*, *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 822 (7th Cir. 2016); *Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008).

Further, all reasonable inferences from the facts alleged in Ms. Mestek's Amended Complaint must be drawn in Plaintiff Mestek's favor, as the District Court also acknowledged. *See, e.g., Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007); *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). The District Court erred in failing to follow these well-established legal standards.

One prime example of these District Court errors is the District Court's factual finding or conclusion that Ms. Bae, the LCO CHC CEO and Health Director at the time and Medical Director Shannon Starr's boss, signed Ms. Mestek's termination letter. Dist. Court Op., Short Appx SA-11. This factual conclusion by the District Court was contrary to the clear fact allegations in the Amended Complaint that Medical Director Starr signed the termination letter and that Ms. Bae had not made the decision to terminate Ms. Mestek, but rather Starr did so. Amended Complaint, Appx A-3, ¶¶ 18-19, 131. The District Court however also, inconsistently, noted in a footnote "Plaintiff also claims that Medical Director Starr was actually the one who fired her … ." District Court Opinion, Short Appx SA-12, note 3.

Thus the District Court noticed that Plaintiff alleged that Starr is the one who fired her but did not treat that allegation as true or give Plaintiff the benefit of all reasonable inferences from that alleged fact (in addition to ignoring Plaintiff's explicit allegation that Starr signed her termination letter, not Ms. Bae).The District Court is clearly not taking all allegations in the Amended Complaint as true, as required by law, and is not giving Ms. Mestek the benefit of all reasonable inferences from her well plead facts. The District Court also improperly took judicial notice of tribal code documents to establish facts regarding how the LCO and CHC *actually* operate and interrelate, as distinguished from how these entities were *intended* in the code to operate and interrelate. District Court Opinion, Short Appx SA-8 – SA-13. This error led to the District Court incorrectly concluding at the motion to dismiss stage that the CHC was an arm of the LCO Tribe for sovereign immunity purposes.

The Amended Complaint allegations are sufficient, when all reasonable inferences are made from them in Ms. Mestek's favor, to support the conclusion that the Medical Director Starr was acting ultra vires, without approval from the LCO tribal governing body, when he terminated Ms. Mestek's employment and when he approved, participated in, or at minimum allowed to proceed the false claims for payment to federal agencies and other misconduct regarding which Ms. Mestek disclosed, complained, and reported.

The District Court correctly noted, "dismissal under Rule 12(b)(6) i s warranted only if no recourse could be granted under any set of facts consistent with the allegations." District Court Opinion, Short Appx SA-5, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). However, Ms. Mestek's allegations in the Amended Complaint that Medical Director Starr signed her termination decision but over Health Director and CEO Bae's name, and that CEO Bae disclaimed any involvement in the decision to terminate Ms. Mestek, are sufficient, when all reasonable inferences are drawn therefrom, to articulate a potential scenario where Starr was acting ultra vires (without approval from CEO Bae or the LCO governing board). Starr therefore would not have had the benefit of a sovereign immunity defense. *See, e.g., Malone v. Bowdoin*, 369 U.S. 643, 647 (1962); *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963). Therefore, dismissal of Ms. Mestek's Amended Complaint was unwarranted because Ms. Mestek could obtain a judicial remedy under the ultra vires scenario set of facts that are consistent with the allegations in her Amended Complaint.

The District Court acknowledged that "plaintiff attempts to put distance between LCO-CHC and the Tribe by arguing that its day-to-day management, including the decision to fire her, and even the allegedly false billing practices, were controlled by LCO-CHC management, not by the Tribe." District Court

Opinion, Short Appx SA-11, citing Am. Compl., dkt. #19 (Appx A-3), ¶¶ 15-23. But the District Court erred in going on to essentially accept the LCO tribal code, which can at most reflect conduct that is intended or desired, to rebut Plaintiff Mestek's allegations regarding conduct that actually occurred. This is not just an improper weighing of competing evidence on a motion to dismiss, it is an improper weighing of defendants' documents that cannot even logically constitute evidence on the fact issue being determined (prematurely).

Although the District Court mistakenly perceived Plaintiff Mestek as asserting no argument or basis for concluding that the Defendants who were individual employees of LCO CHC lacked sovereign immunity, Plaintiff Mestek did allege facts in her Amended Complaint that, when taken as true and when given the benefit of all reasonable inferences, support the fact scenario where the individual employee defendants, including Starr, were acting ultra vires in regard to their (mis-)conduct in terminating Plaintiff Mestek for her federally protected whistleblowing. Such ultra vires actions would vitiate such defendants' sovereign immunity defense.

The District Court's related conclusion that the relief sought by Ms. Mestek against all of the individual employees of LCO-CHC only concerned their alleged actions that "fall easily within the scope of their employment" was not only an erroneous conclusion, it was also a fact determination not allowed to be made on a

Rule 12(b)(6) motion to dismiss because it does not take Ms. Mestek's Amended

Complaint allegations as true nor does it give her the benefit of every reasonable

inference from those fact allegations in regard to the ultra vires action scenario.

Plaintiff Mestek pointed out below in her opposition to Defendants' Motion to

Dismiss, Dkt-25, that discovery and the summary judgment procedures was

appropriate and needed to resolve fact questions that go beyond the pleadings such

as whether Defendants or any of them acted ultra vires in taking their adverse

actions against Ms. Mestek.

For all of the foregoing reasons, because the District Court failed to take

Plaintiff's well plead allegations in the Amended Complaint as true, and to give

her the benefit of all reasonable inferences therefrom, the District Court's decision

below dismissing Plaintiff's Amended Complaint should be reversed.

## III.   THE DISTRICT COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT DEFENDANTS HAD A SOVEREIGN IMMUNITY DEFENSE TO MS. MESTEK'S CLAIMS FOR INJUNCTIVE RELIEF AGAINST THE INDIVIDUAL DEFENDANTS

The standard of review for this issue is *de novo* because it involves the issue

of law at to whether a sovereign immunity defense applies to a claim for injunctive

relief.

The District Court did not address explicitly the issue of whether Defendants

could assert and prevail on a sovereign immunity defense for Plaintiff Mestek's

claims for injunctive relief. Dist. Court Op., Short Appx SA-2. However, the

**Page 32**

Amended Complaint clearly seeks injunctive relief, including for Blacklisting. *See e.g.*, Amended Complaint, Appx A-3, ¶¶182-189.

Plaintiff also asserted the injunctive relief exception to a sovereign immunity defense in her opposition to Defendants' Motion to Dismiss the Amended Complaint. Dkt-25. The courts have recognized that a defense of tribal sovereign immunity will not apply with respect to a claim for prospective injunctive relief, at least in regard to individual tribal officials (even in their official capacities), as distinguished from a claim against a tribe per se. *See, e.g., TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999). The Fifth Circuit, in *TTEA*, noted the Supreme Court precedent supporting this conclusion.

> In *Puyallup Tribe v. Washington Game Department*, 433 U.S. 165, 171 (1977), the Court reaffirmed that "whether or not the Tribe itself may be sued in a state court without its consent or that of Congress, a suit to enjoin violations of state law by individual tribal members is permissible." Though the defendants in *Puyallup* were not tribal officials, the Court cited it the next Term in finding a tribal governor not immune from a suit seeking declaratory and injunctive relief against enforcement of a tribal ordinance. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978). Years later, Justice Stevens suggested that tribal sovereign immunity might not extend "to claims for prospective equitable relief against a tribe." *Oklahoma Tax Commission v. Potawatomi Indian Tribe*, 498 U.S. 510, 515 (1991) (Stevens, J., concurring).
>
> The distinction between a suit for damages and one for declaratory or injunctive relief is eminently sensible, and nothing in *Kiowa* undermines the relevant logic. State sovereign immunity does not preclude declaratory or injunctive relief against state officials. *See Ex Parte Young*, 209 U.S. 123 (1908). There is no reason that the federal common law doctrine of tribal sovereign immunity, a distinct but

**Page 33**

> similar concept, should extend further than the now-constitutionalized
> doctrine of state sovereign immunity. *Cf. Seminole Tribe v. Florida*,
> 517 U.S. 44 (1996). In any event, *Santa Clara Pueblo* controls. Thus,
> while the district court correctly dismissed the damages claim based
> on sovereign immunity, tribal immunity did not support its order
> dismissing the actions seeking declaratory and injunctive relief.

*TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 680-81 (5th Cir. 1999).

The District Court erred in dismissing Plaintiff's claims for injunctive relief against the individual Defendants on the basis of Defendants' assertion of a tribal sovereign immunity defense. And, as a consequence, as noted *infra*, erred in dismissing Ms. Mestek's state claim brought under the court's supplemental jurisdiction.

## IV. THE DISTRICT COURT ERRED IN CONCLUDING THAT MS. MESTEK'S AMENDED COMPLAINT DID NOT STATE CLAIMS AGAINST ANY DEFENDANTS (EXCEPT DEFENDANT POPP) IN THEIR PERSONAL RATHER THAN OFFICIAL CAPACITIES

The standard of review for this issue is *de novo* because it involves the issue of law at to whether Ms. Mestek's Amended Complaint states claims against the individual Defendants in their personal capacities in addition to stating claims against these Defendants in their official capacities.

Although the District Court acknowledged that Plaintiff Mestek sued defendants Taylor, Bae, Starr, Klecan, and Franz in both their official and individual capacities, Dist. Court Op., Short Appx SA-13, citing Am. Compl., dkt. #19 (Appx A-3), the District Court nonetheless concluded that Ms. Mestek's

Amended Complaint did not state claims against any defendants in their individual/personal capacities as distinguished from their official capacities. District Court Opinion, Short Appx SA-13 – SA-15. This was clear error because some of the relief requested in the Complaint including injunctive relief from blacklisting and interference with business and contract could be ordered against and would be available from some of the defendants acting in their personal rather than official capacities.

Consequently, the District Court below should have applied the Supreme Court's rule in *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017), which the District Court itself noted, that in personal capacity suits "the real party in interest is the individual, not the sovereign." *Id*. The District Court, in its Opinion, Short Appx SA-14 – SA-15, simply misread the Amended Complaint in concluding that Plaintiff Mestek sought relief that only the LCO or LCO CHC could provide. If one or more of the individual defendants was engaged in Blacklisting, for example, injunctive relief could be ordered against each such individual defendant.

Although the District Court noted that Mestek's Amended Complaint requests front pay, back pay, damages, reinstatement, and injunctive relief prohibiting defendants from blacklisting or retaliating against her (Dist. Court Op., Short Appx SA-14, citing Am. Compl., Dkt.-19, ¶ 168 (Appx A-3), the District Court failed to recognize that injunctive relief on the blacklisting claim and an

**Page 35**

award of some damages for blacklisting could be obtained against individual defendants. Consequently, the District Court erred in finding that *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) had no application to Ms. Mestek's claims (as distinguished from some application, in regard to her claims for injunctive relief and for blacklisting damages).

Even if the District Court below had correctly read the Amended Complaint to only state claims against the individual Defendants in their official capacities, Ms. Mestek's claims against the individual defendants should still not have been dismissed based on tribal sovereign immunity. The Ninth Circuit's decision in *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1125 (9th Cir. 2007), supports this conclusion, as explained in *Dahlstrom v. Sauk-Suiattle Indian Tribe*, 2017 WL 1064399 (W.D. Wash. Mar. 21, 2017).

In *Stoner*, the Ninth Circuit held that state employees may be sued under the FCA even for "actions taken in the course of their official duties." *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1125 (9th Cir. 2007). The Court reasoned that qui tam suits against individual state employees are permissible "because such [actions] seek damages from the individual defendants rather than the state treasury."

For all of the above reasons, the District Court erred in dismissing Plaintiff Mestek's claims against the individual defendants.

**Page 36**

## V.     THE DISTRICT COURT ERRED AS A MATTER OF LAW IN DISMISSING MS. MESTEK'S STATE LAW CLAIM AGAINST DEFENDANT POPP

The standard of review for this issue is *de novo* because it involves the issue of law at to whether the District Court should have dismissed a supplemental jurisdiction based state law claim when one or more related federal claims should have survived the defendants' motion to dismiss. Had the District Court in this case been correct in dismissing all of Plaintiff Mestek's federal claims, including her claims for injunctive relief on her blacklisting claim, then the standard of review regarding dismissal of the supplemental jurisdiction based state law claim would have been abuse of discretion.

Defendant Popp has no sovereign immunity defense, having been a private contractor who performed work for LCO.  The District Court incorrectly dismissed, at minimum, Ms. Mestek's federal claims for injunctive relief against all the defendants on the grounds of sovereign immunity, as discussed *supra*. Because these federal claims for injunctive relief should have survived Defendants' motion to dismiss, the District Court had supplemental jurisdiction to decide Ms. Mestek's state claim against Defendant Popp and there was no basis for the District Court to dismiss this claim. When the District Court held to the contrary, District Court Opinion, Short Appx SA-15 – SA-16, therefore, it clearly erred.

**VI.    ON AN ISSUE OF FIRST IMPRESSION IN THE SEVENTH CIRCUIT, THE DISTRICT COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT LCO CHC, AS A TRIBAL ENTITY, COULD NOT BE SUED UNDER THE FCA ANTI-RETALIATION PROVISION WHICH IS LIMITED TO NEITHER "PERSONS" OR "EMPLOYERS"**

The standard of review for this issue is *de novo* because it involves the issue of law at to whether an Indian Tribe, or a tribal entity eligible for the protection of sovereign immunity, can have liability under the FCA anti-retaliation provision, notwithstanding any tribal sovereign immunity such an entity might otherwise enjoy.

The FCA anti-retaliation provision, 31 U.S.C. § 3730(h), as amended, does not limit liability for whistleblower retaliation to "persons" or "employers." The Eighth Circuit concluded that even if a municipal (or other) entity was not a "person" as that term is used under another provision of the FCA, 31 U.S.C. §3729(a)(1), the "qui tam" provision, that the term "employer" as used in the then operative version of the FCA anti-retaliation provision, 31 U.S.C. §3730(h) (since amended to remove the term "employer") is sufficiently broad to include such entities and such entities could be subject to a claim under that FCA anti-retaliation provision even though they might not be subject to suit under the FCA's qui tam provision. *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 932 (8th Cir. 2002).

The issue of whether a tribal government entity is subject to suit under the FCA's anti-retaliation provision is a question of first impression in the Seventh

**Page 38**

Circuit. Although the District Court below held to the contrary, Dist. Court Op., Short Appx SA-6 – SA-8, Plaintiff Mestek requests this Court of Appeals to adopt the reasoning of the Eight Circuit in *Wilkins* in regard to municpalities and apply that rationale to tribal entities as well. Even if a tribal entity is deemed to not be a "person" under the FCA's qui tam provision, such entities should still be deemed subject to liability under § 3730(h) due to the anti-retaliation provision's broader scope which initially was not limited to persons but to employers and now is not even limited to employers. The current language of the FCA's anti-retaliation provision is essentially universal in regard to the scope of those who may be held liable for retaliation, and given that tribes are frequently employers, and in many cases large ones, it is reasonable to conclude that Congress intended tribes to fall within the FCA's prohibition on retaliation against false claims whistleblowers.

The D.C. Circuit, using what Plaintiff Mestek considers analogous reasoning, recently held that a tribe's sovereign immunity was abrogated by a bankruptcy statute that did not explicitly reference tribal immunity or tribes, holding that abrogation of such immunity does not require explicit reference to tribes or any magic language.

> To abrogate sovereign immunity "Congress need not state its intent in any particular way." *FAA v. Cooper*, 566 U.S. 284, 291, 132 S.Ct. 1441, 182 L.Ed.2d 497 (2012). The Supreme Court has "never required that Congress use magic words" to make its intent to abrogate clear. *Id*. To the contrary, it has explained that the requirement of unequivocal abrogation " 'is a tool for interpreting the law' and that it does not

**Page 39**

'displac[e] the other traditional tools of statutory construction.' " *Id.* (quoting *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008)) (alteration in original); *cf. Penobscot Nation v. Frey*, 3 F.4th 484, 493, 503 (1st Cir. 2021) (en banc) (holding that the Indian canons play no role in interpreting an unambiguous statute), <u>cert. denied</u>, No. 21-838, ––– U.S. ––––, 142 S.Ct. 1669, ––– L.Ed.2d –––– (U.S. Apr. 18, 2022).

*In re Coughlin*, 33 F.4th 600, 604-608 (2022). Plaintiff Mestek believes that Congress intended the prohibition on retaliation in the FCA to apply to all employers including Indian Tribes just as the D.C. Circuit held that tribes fell into the category of all governments in its decision in *Coughlin*, and respectfully requests that this Court, the Court of Appeals for the Seventh Circuit, so hold on this important question of first impression.

## CONCLUSION AND RELIEF REQUESTED

For all of the foregoing reasons, because the District Court clearly erred in dismissing each of Ms. Mestek's claims, the District Court's May 18, 2022 Opinion and Order, and accompanying Judgment, dismissing Plaintiff's Amended Complaint should be reversed.

<u>/s/ Mick G. Harrison</u>
Mick G. Harrison, Attorney at Law #55038
520 S. Walnut Street, #1147
Bloomington, IN  47402
Phone: 812-361-6220
Fax: 812-233-3135
E-mail: <u>mickharrisonesq@gmail.com</u>

Attorney of Record for all Plaintiffs

**Page 40**

**RULE 32(g)(1) CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(g)(1) because the brief contains only 9,028 words (total except for Disclosure Statement), as counted by Microsoft Word Microsoft Office software updated as of 2022, which is less that the 14,000 words allowed by rule. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Microsoft Office software updated as of 2022, in Times New Roman 14 point.

/s/ Mick G. Harrison_____
MICK G. HARRISON

## CIR. R. 30(d) CERTIFICATION REGARDING APPENDIX

Pursuant to Cir. R. 30(d), the undersigned counsel hereby certifies that all materials required by Cir. R. 30(a) and (b) are included in the Short Appendix and the Separate Appendix hereto.


/s/ Mick G. Harrison
MICK G. HARRISON

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2020, I electronically re-filed the foregoing Appellant Mestek's opening Brief and Appendix with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. I also emailed the re-filed Appellant's Brief and Appendix to Defendants' counsel on this date. Paper copies will be mailed to the Court and to Defendants' counsel once the brief is accepted.

The Defendants-Appellees' counsel to whom the above described service was made and is being made are:

James Schlender, Attorney General
Dyllan Linehan, Assistant Attorney General
Lac Courte Oreilles Band of Lake Superior
Chippewa Indians
13394 West Trepania Road
Hayward, WI 54843
Phone: (715) 558-7423
Email: james.schlender@lco-nsn.gov
dyllan.linehan@lco-nsn.gov

Andrew Adams III
Lorenzo Gudino
Hogen Adams PLLC
1935 County Rd. B2 W., Ste. 460
St. Paul, MN 55113
Phone: (651) 842-9100
E-mail: aadams@hogenadams.com
lgudino@hogenadams.com


/s/ Mick G. Harrison
Mick G. Harrison, Attorney at Law
Counsel for Appellant Mestek

RECORD NO. 22-2077
_____

**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

**In The**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

**TERESSA MESTEK,**

*Plaintiff – Appellant,*

**v.**

**LAC COURTE OREILLES COMMUNITY HEALTH CENTER,**
**LOUIS TAYLOR (in both his personal and official capacity),**
**JACQUELINE BAE, PH.D. (in both her personal and official capacity),**
**SHANNON STARR, M.D. (in both his personal and official capacity),**
**SARAH KLECAN (in both her personal and official capacity),**
**DAVID FRANZ (in both his personal and official capacity),**
**And MICHAEL POPP (in his personal capacity),**

*Defendants -- Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

———————————

**SHORT APPENDIX**

———————————

**Mick G. Harrison, Attorney at Law,**
**520 S. Walnut Street, #1147**
**Bloomington, IN 47402**
**Tel.: 812-361-6220; Fax: 812-233-3135**
**Eml. mickharrisonesq@gmail.com**
**Counsel for Plaintiff-Appellant**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERESSA MESTEK,

                Plaintiff,

   v.

LAC COURTE OREILLES
COMMUNITY HEALTH CENTER,
LOUIS TAYLOR,
(in both his personal and official capacity)
JACQUELINE BAE, PH.D.,
(in both her personal and official capacity)
SHANNON STARR, M.D.,
(in both his personal and official capacity)
SARAH KLECAN,
(in both her personal and official capacity)
DAVID FRANZ,
(in both his personal and official capacity),
and MICHAEL POPP, in his personal capacity,

                Defendants.

OPINION AND ORDER

21-cv-541-wmc

---

Plaintiff Teresa Mestek brings this action under the federal False Claims Act (FCA), 31 U.S.C. §3730(h), and Wisconsin common law, claiming that defendants wrongfully retaliated against her by terminating her employment at the Lac Courte Oreilles Community Health Center ("LCO-CHC") as a result of her efforts to prevent health care coding and billing fraud.  Before the court is defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Specifically, defendants argue that the FCA does not allow claims against an arm of a federally-recognized, Native American tribe like the LCO-CHC under the doctrine of sovereign immunity. For the reasons stated below, the court will grant defendants' motion to dismiss.

**Page SA-2**

ALLEGATIONS OF FACT[1]

**A. The Parties**

Defendant LCO-CHC is a health care clinic associated with the Lac Courte Oreilles Tribe Band of Lake Superior Chippewa Indians ("the Tribe").  While employed by the LCO-CHC, plaintiff Teresa Mestek served as its Director of Health Information.  At the time the complaint was filed, defendant Louis Taylor was the Chief Executive Officer of the Tribe and defendants Shannon Starr, Sarah Klecan, David Franz, and Jaqueline Bae were all LCO-CHC employees.  Finally, defendant Michael Popp was the owner and president of MJP Healthcare Consulting LLC, which worked with LCO-CHC to implement a new billing system.

**B. Defendants' Alleged Conduct**

From 1994 to 2003, Mestek worked at LCO-CHC before moving to an unrelated hospital system.  In 2013, Mestek was rehired at LCO-CHC as the Director of Health Information, where she oversaw Health Information Management compliance and documentation standards.

In 2016, LCO-CHC purchased the rights to use "Intergy," an electronic health record software system developed and sold by Greenway Health, LLC.  LSO-CHC planned to implement the Intergy software to handle billing and coding starting in 2017, with Michael Popp, an independent consultant liaising with Greenway Health and using Intergy

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all the factual allegations in the amended complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

**Page SA-3**

software system files from the Peter Christensen Health Center as a template for LCO-CHC's upcoming transition to Intergy.   However, the software files from Christensen Health allegedly contained outdated diagnostic codes, causing the new LCO-CHC Intergy system to contain incorrect codes and creating severe issues with client billing and documentation.[2]

As the Director of Health Information, Mestek worked with another coding consultant, James Walker, to attempt to fix these issues and bring them to the attention of LCO-CHC management, as well as train its healthcare providers on the new system. However, management was slow to respond to the resulting coding and billing errors found by Mestek and Walker.   Meanwhile, these errors posed ongoing risks to LCO-CHC's compliance with regulations for federally funded healthcare programs.   When Walker's contract was terminated by LCO-CHC in May of 2018, Popp was asked to assume Walker's coding responsibilities.   Around 2 months later, however, LCO-CHC received an audit report that had been authored by Walker in 2017, which noted serious flaws with the Intergy program and identified plaintiff Mestek's role in investigating those problems.

In July 2018, after LCO-CHC received Walker's report, Mestek was called to Medical Director Jacqueline Bae's office and asked if she was "loyal" to LCO-CHC, to which Mestek said, "yes."   Even so, Mestek continued to look for coding compliance issues in LCO-CHC documentation after that meeting.   On August 24, 2018, LCO-CHC

---

[2] Whatever the specific issues attributable to Christensen Health's Intergy software files, Greenway Health also entered into a February 2019 consent degree to pay $57.25 million to the United States under the FCA for allegedly "misrepresenting the capabilities" of another of its electronic health record software systems, which in turn caused users to submit false claims to the government.   *See* https://en.wikipedia.org/wiki/Greenway_Health (last visited May 15, 2022).

**Page SA-4**

terminated Mestek's employment, which she appealed.   That appeal was denied by defendant Bae, prompting Mestek to bring this action under the FCA's anti-retaliation provision and Wisconsin common law.

## OPINION

A motion to dismiss for failure to state a claim is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6).  The court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).  Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  To survive a motion to dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly,* 550 U.S. at 570).  "[W]hen it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

Plaintiff advances two, basic arguments against dismissal:  (1) even if the Tribe itself were directly implicated in this suit, sovereign immunity would not apply; and (2) if sovereign immunity does apply to the Tribe, it does not extend to defendants LCO-CHC and its employees or to defendant Popp as an independent contractor.  For the reasons explained below, the LCO-CHC (and by extension its employees) is plainly an arm of the

**Page SA-5**

Tribe for purposes of sovereign immunity, and this court has no further basis to exercise subject matter jurisdiction over the remainder of this lawsuit, including the claim against Popp for common law negligence.

## I. The Tribe Has Sovereign Immunity

Defendants argue that plaintiff's FCA anti-retaliation claim is barred because the Tribe has not waived its sovereign immunity.  (Defs.' Br. (dkt. #22) 1.)  Plaintiff argues in response that defendants can be sued under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h), even if they cannot be sued as an arm of the Trive under the FCA's *qui tam* provision, 31 U.S.C. § 3729(a)(1)).  (Pl.'s Opp'n. (dkt. #25) 4.)  While the Seventh Circuit has not opined on this issue, the great weight of legal analysis from other federal courts dismisses the distinction plaintiff would draw here.  Moreover, the court finds these opinions to be well-reasoned and will follow them.

To begin, any "persons" who violate the FCA may be held liable under 31 U.S.C. § 3729(a)(1).  However, the Supreme Court has found that states, as sovereigns, are not "persons," and thus, cannot be sued under the FCA's *qui tam* provision.  *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 781 (2000).  Other federal courts have since extended the reasoning in *Vermont* to federally recognized tribes, finding that they, too, as sovereigns, are not "persons."  *E.g., United States ex rel. Cain v. Salish Kootenai Coll., Inc.*, 862 F.3d 939 (9th Cir. 2017); *U.S. v. Menominee Tribal Enterprises*, 601 F.Supp. 1061, 1068 (E.D. Wis. 2009).   As such, these tribes cannot be liable under 31 U.S.C. § 3729(a)(1) either.  *Id*.

The closer question is whether a federally recognized tribe can be held liable under

**Page SA-6**

the FCA anti-retaliation provision, 31 U.S.C. § 3730(h), which does *not* limit liability to "persons". This is because other courts have found the distinction between the language of these two statutory provisions important. For instance, while the Eighth Circuit avoided the question of whether a municipal entity is a "person" immune under 3729(a)(1), that court held that an "employer" *could* be subject to the FCA anti-retaliation claim under § 3730(h), even if it were a "person." *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 928 (8th Cir. 2002). Drawing on this same logic, plaintiff here suggests that even if a tribal arm were not a "person," it is still liable under § 3730(h) due to the anti-retaliation provision's broader scope.

In support of this argument, plaintiff turns to a decision of the D.C. Circuit Court of Appeals in *Slack v. Wash. Metro. Area Transit Auth.*, 325 F.Supp.3d 146, 155 (D.D.C. 2018). In *Slack*, the D.C. Circuit agreed with the plaintiff that "[u]nlike the text of the qui tam provision, nothing in the text of the whistleblower provision at issue here limits liability to legal persons." 325 F. Supp. 3d at 152–53. However, plaintiff conveniently fails to cite that circuit's *other* ruling in *Slack*, which went on to find that this distinction was *not* sufficient alone to allow a suit against a sovereign's arm to move forward. *Id*. at 153. This holding in *Slack* relies in part on the Supreme Court's mandate that sovereign immunity applies unless the relevant statutory language "evince[s] an unmistakably clear intention to abrogate the States' constitutionally secured immunity from suit." *Dellmuth v. Muth*, 491 U.S. 223, 232 (1989).

Ultimately, therefore, the D.C. Circuit held that Congress would have to "clearly declare its intent to abrogate the states' sovereign immunity when it passed the FCA" in

**Page SA-7**

order to confer jurisdiction to the court.  *Slack*, 325 F. Supp. 3d 146 at 153;  *see also Monroe*

*v. Fort Valley State Univ.*, Civil Action 5:21-CV-89 (MTT) (M.D. Ga. Nov. 22, 2021)

(holding that despite plaintiff's persuasive legislative history and statutory interpretation

arguments, the FCA's anti-retaliation provision does not abrogate a state's sovereign

immunity because that provision lacked Congress's unequivocal intent to do so).  With no

evidence that Congress intended to remove sovereign immunity to a tribal arm under the

FCA's anti-retaliation provision, therefore, a simple ambiguity in language is insufficient

to hold the Tribe or its arms liable.


## II. LCO-CHC Is an Arm of The Tribe

Alternatively, plaintiff argues that even if the Tribe could assert sovereign immunity,

that immunity does not extend to a medical center connected to the Tribe.  This secondary

question turns on whether LCO-CHC is an "arm of the tribe" sufficient for the Tribe to

confer sovereign immunity upon it.  *See Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725

(9th Cir. 2008) ("[t]ribal corporations acting as an arm of the tribe enjoy the same

sovereign immunity granted to a tribe itself.")

As a threshold matter, the Tribe has provided LCO-CHC's governance documents

for the court's consideration, while plaintiff argues that:  these documents cannot be

considered at the motion to dismiss stage; or at the very least, the court must convert this

motion to dismiss one for summary judgment before considering those documents.  (Pl.'s

Opp. (dkt. #25) 9.)  However, that argument is unsupported by the law.  First, Seventh

Circuit case law states that when deciding Rule 12(b)(6) motions, the court "may consider

plaintiffs' complaints, documents referenced in the complaints, documents critical to the

**Page SA-8**

complaints, and information subject to judicial notice." *Bruguier v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 237 F.Supp.3d 867, 870 (W.D. Wis. 2017) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *see also Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (finding that treaties central to the Menominee's claims were not "outside the pleadings"). Second, Federal Rule of Civil Procedure 10(c) also states that "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." While courts, including those in the Seventh Circuit, have narrowed this exception to documents "referred to in plaintiff's complaint" and "central to his claim," *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir.2006) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir.2002)), a court may take judicial notice of documents in the public record without converting a motion to dismiss into a motion for summary judgment. *Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004).

Of particular relevance to the issue in dispute are Exhibits #5 and #6, which are represented to be public and direct excerpts from the Tribe's "Tribal Code of Law." (Def.'s Br. (dkt. #22-5)) (Def.'s Br. (dkt. #22-6).) While defendants attached other exhibits to their briefing, given the fact that these other documents were *not* considered for purposes of this opinion *and* are closer calls as to whether the court should consider them at the motion-to-dismiss stage, the court will only take judicial notice of Exhibits #5 and #6. Specifically, Exhibit #5 contains the Tribal Court section of the Code and Exhibit #6 covers the Code's section devoted to the Tribe's Policies and Procedures. (Def.'s Br. (dkt. #22-5).)

**Page SA-9**

Accordingly, both of these documents are not only central to plaintiff's claim, but go directly to whether the LCO-CHC is an arm of the Tribe.  Indeed, plaintiff herself alleges that, "[d]uring the times relevant to this complaint including 2017 and 2018, LCO-CHC acted *de facto* as a business entity independent of the LCO Tribe."  (Am. Compl. (dkt. #19) ¶ 14.)  The Tribe's governing documents are entirely relevant to that claim.  Regardless, the governing documents are a matter of public record, allowing the court to consider Exhibits #5 and #6 without converting defendants' motion to dismiss to one for summary judgment.

The Seventh Circuit has not directly dealt with what constitutes an "arm of a federally-recognized, Native American tribe," but case law from other circuits are once again instructive.  Determining whether an entity is an arm of the tribe requires examining factors such as: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities."  *White v. Univ. of California*, 765 F.3d 1010 (9th Cir. 2014) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)).  Applying these factors, the Ninth Circuit found a business to be a tribal arm where "the Tribe created [the business] pursuant to a tribal ordinance and intergovernmental agreement, and the tribal corporation is wholly owned and managed by the Tribe."  *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 726 (9th Cir. 2008).

**Page SA-10**

Here, plaintiff attempts to put distance between LCO-CHC and the Tribe by arguing that its day-to-day management, including the decision to fire her, and even the allegedly false billing practices, were controlled by LCO-CHC management, not by the Tribe.  (Am. Compl. (dkt. #19) ¶ 15-23.)  Comparing the Lac Courte Oreilles Tribal Code of Law against the relevant *White* factors, however, leads to a different legal conclusion:

1)  The LCO-CHC was organized through the Tribal Code of Law, which sets out LCO-CHC hiring, HR and management practices, among other things.  Title XIV, Chapter 5.

2)  The express purpose of LCO-CHC is to "provide confidential quality family orientated healthcare in an environment that is respectful and fosters innovation utilizing available resource to maximize services to improve the overall health of the Tribal community."  Title XIV, Section § 5.104

3)  Under the Tribal Code of Law, the Health Director, who at the time of the incident was Jacqualyn Bae, is "responsible for the planning, organization, and administration of all tribal health services and shall oversee all matters relating to program requirements including daily operations of the LCO-CHC."  Title XIV, Section § 5.305.  The Health Director also reports directly to the Tribal Governing Board.  *Id*.  Similarly, regarding hiring, "[t]he Health Director will notify the Tribal Governing Board who was hired for what position(s) and/or if a position(s) was reposted."  Title XIV, Section § 5.411.

4)  While plaintiff argues that Bae simply served in a "figurehead capacity," Bae personally signed her termination letter.  (Am. Compl. (dkt. #19) ¶ 20-23.)  In

**Page SA-11**

fact, any termination was required to "be forwarded to the Health Director for final approval or denial." Title XIV, Section § 5.1203(1)(d)(I).[3]

5) The Tribe intended to confer sovereign immunity upon the LCO-CHC under "Title II, Chapter 5 of the LCOTCL – Sovereign Immunity Code," which states that "immunity from suit means that no private lawsuit can be maintained against the Tribe or any of its subordinate entities *such as the LCO-CHC*, unless the Tribe consents to the action" Title XIV § 5.302 (emphasis added).

6) Finally, the financial ties between LCO-CHC and the Tribe are unclear from the materials before the court -- aside from the fact that Bae, who reported to the Tribal Governing Board, was in charge of ensuring the hospital remained in budget and liaising with the Tribal Accounting Department. Title XIV § 5.305. However, plaintiff represents that, "the LCO's budget, although it did include some funding from the LCO Tribe, was largely federal government funded through grants and reimbursements from Medicare and Medicaid programs." (Am. Compl. (dkt. #19) ¶ 20-23.) As such, this factor does not weigh for or against finding the LCO-CHC to be an arm of the tribe.

Of the five factors assessed above, four strongly point to the LCO-CHC being an arm of the Tribe, while only the fifth factor -- financial ties between the Tribe and clinic -- remain ambiguous. Moreover, the documents confirm a deep, long-term relationship

---

[3] Plaintiff also claims that Medical Director Starr was actually the one who fired her, but even if this were true (at least directly), Starr was required by the Tribal Code to "report to the Health Director [Bae] on all matters regarding patient care and the supervision of medical personnel." Title XIV, Section § 5.306.

**Page SA-12**

between LCO-CHC and the Tribe.  Of particular note is the fact that even the LCO-CHC personnel policies are set forth in the Tribal Code of Law, and the Tribe's stated intent is for LCO-CHC to have sovereign immunity.  Finally, like the Tenth Circuit in *Breakthrough Mgmt.*, this court also finds the Tribe's "own descriptions of the [entity] to be significant." 629 F.3d at 1191–92.  Given all of these factors, the LCO-CHC has established itself as an arm of the Tribe, and as such, it is covered by the Tribe's sovereign immunity.

Whether employees, too, are covered by the LCO-CHC's sovereign immunity is a more difficult question.  Mestek sued defendants Taylor, Bae, Starr, Klecan, and Franz in both their official and individual capacities.  (Am. Compl. (dkt. #19).)  For tribal employees acting in their official capacity, "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017).  However, the Supreme Court has noted that, for personal capacity suits, "the real party in interest is the individual, not the sovereign." *Id*. Under this holding, individual defendants may assert sovereign immunity in their official capacity as employees of LCO-CHC, but not their personal capacities.

Since the Supreme Court decided *Lewis*, however, federal circuit courts have held that the distinction between official and personal capacity should not be resolved simply on the fact that the caption of the case identifies defendants in their personal capacity. "Such a misinterpretation collapses the distinction between genuine and nominal personal-capacity suits and, rather conveniently for [plaintiff's] case, begs the question at issue in favor of the very formalism that the Court's well-established jurisprudence has long disavowed." *Cunningham v. Lester*, 990 F.3d 361, 366–67 (4th Cir. 2021).  The Seventh

**Page SA-13**

Circuit took a similar approach in finding that sovereign immunity applied to tribal police officers even though the plaintiff sued the individual officers in their personal capacities. *Genskow v. Prevost*, 825 F. App'x 388, 391 (7th Cir. 2020).  This is because the tribe was "the real party in interest," and the claims against the officers were "essentially a claim against the tribe and therefore barred by its sovereign immunity."  *Id*.

To determine whether the Tribe or its arm, the LCO-CHC, is the true party in interest, therefore, courts must look for the party "against whom the judgment would operate and on whom its burden would fall."  *Cunningham v. Lester*, 990 F.3d 361, 367 (4th Cir. 2021).  Here, defendants argue that plaintiff's requested relief is actually against the LCO-CHC, not the individual defendants.  (Def.'s Op. Br. (dkt. #22) 13.)  Specifically, plaintiff Mestek's amended complaint requests front pay, back pay, damages, reinstatement, and injunctive relief prohibiting defendants from blacklisting or retaliating against her.  (Am. Compl. (dkt. #19) ¶ 168.)  Besides other unspecified damages, therefore, Mestek is seeking relief that would have to come from LCO-CHC, putting the burden of any judgment on the Tribe's health center and suggesting it is the true party at interest.

The allegations in plaintiff's amended complaint also make plain that her claims for relief from the individual defendants are all essentially claims against LCO-CHC, as she consistently refers to the individual defendants granting relief in their official capacities.  For instance, Mestek's "claim seeks injunctive relief against LCO CHC, including all applicable equitable remedies, *through its officials*, Defendants Taylor, Starr, Bae, Franz, and Klecan." (Am. Compl. (dkt. #19) ¶ 171) (emphasis added).)  Additionally, plaintiff alleges that "LCO CHC, *acting through Defendants* Taylor, Starr, Bae, and Klecan in their capacity

**Page SA-14**

as LCO CHC officials, intentionally interfered with Ms. Mestek's LCO CHC's employment." (Am. Compl. (dkt. #19) ¶ 175) (emphasis added).  These allegations readily distinguish Mesteck's claims for relief from *Lewis*, which The Supreme Court explained was "simply a suit against Clarke to recover for his personal actions," and "will not require action by the sovereign or disturb the sovereign's property."  137 S. Ct. at 1291 (quoting *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)).

Finally, plaintiff herself makes no argument on the matter of sovereign immunity for individual employees, giving defendants the sole word on this issue.  This is hardly surprising since not only is the relief sought against all of the individual employees of LCO-CHC sought in their capacity as employees of an arm of the Tribe, but all of their alleged *actions* also fall easily within the scope of their employment.  Given the unambiguous pleadings in the amended complaint, the relevant caselaw and the briefing provided by the parties, Mestek may have *formalistically* sued Taylor, Bae, Starr, Klecan, and Franz in both their individual and official capacities, but her claims and requested relief establish that the real party in interest is LCO-CHC, an arm of the Tribe.  Thus, defendants Taylor, Bae, Starr, Klecan, and Franz are entitled to assert the LCO-CHC's sovereign immunity.

This just leaves the last individual defendant standing:  Popp, who is an independent contractor and sued solely sued in his personal capacity.  However, plaintiff only alleges a Wisconsin state law claim against him.  (Am. Compl. (dkt. #19) ¶ 177.)  While the court could exercise supplemental jurisdiction over this remaining state law claim, there is a presumption against doing so when all federal claims have been dismissed.  *Al's Serv. Ctr. v. BP Prod. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("[w]hen all federal claims in

**Page SA-15**

a suit in federal court are dismissed before trial, the presumption is that the court will

relinquish federal jurisdiction over any supplemental state-law claims").   Accordingly,

plaintiff may not proceed against any of the defendants under the FCA, and this court loses

its jurisdiction over those federal claims, as well as plaintiff's supplemental state law claims.


ORDER

IT IS ORDERED that defendants' motion to dismiss for failure to state a claim and

lack of subject-matter jurisdiction (dkt. #21) is GRANTED.   Plaintiff's complaint is

DISMISSED WITHOUT PREJUDICE.

Entered this 17th day of May, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

**Page SA-16**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERESSA MESTEK,

     Plaintiff,

     v.

LAC COURTE OREILLES COMMUNITY
HEALTH CENTER, LOUIS TAYLOR, (in
both his personal and official capacity)
JACQUELINE BAE, PH.D., (in both her
personal and official capacity) SHANNON
STARR, M.D., (in both his personal and
official capacity) SARAH KLECAN, (in both
her personal and official capacity) DAVID
FRANZ, (in both his personal and official
capacity) and MICHAEL POPP, (in his
personal capacity),

     Defendants.

Case No.  21-cv-541-wmc

---

## JUDGMENT IN A CIVIL CASE

---

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of

defendants Lac Courte Oreilles Community Health Center, Louis Taylor, Jacqueline

Bae, PH.D., Shannon Starr, M.D., Sarah Klecan, David Franz, and Michael Popp

against plaintiff Teressa Mestek dismissing this case without prejudice for lack of

subject matter jurisdiction.


   s/V. Olmo, Deputy Clerk           5/18/2022
   Joel Turner, Clerk of Court            Date

**Page SA-17**